IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CARL ALLEN,

           Plaintiff,

v.                                        CIVIL ACTION NO.  5:11-cv-00036

PROGRESSIVE CLASSIC INSURANCE
COMPANY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant's Motion for Summary Judgment (Document 10). After careful consideration of Defendant's motion, Defendant's supporting memoranda (Document 11), Plaintiff's Response (Document 12), Defendant's Reply (Document 13) and all other written submissions relative thereto, the Court denies Defendant's motion for summary judgment.[1]

### I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

On June 12, 2009, Melinda Smailes and Plaintiff Carl Allen were involved in a vehicle collision on Route 16 in or near Beckley, West Virginia. At the time of the accident, Ms. Smailes was insured under a liability insurance policy issued by Erie Insurance Group with a per person liability coverage limit of $100,000. Meanwhile, Plaintiff had an underinsured motorist policy ("UIM") (policy no. 16774616-5) with Defendant, Progressive Classic Insurance

---

[1] The Court is aware that Plaintiff's response was untimely in violation of L.R. Civ. P. 7.1 (a)(7). However, the Court will, in its discretion and in the interests of justice, consider Plaintiff's response.

Company.  Plaintiff's UIM policy had coverage limits of $50,000 per person and $100,000 per accident. At issue here is the $50,000 per person UIM policy limit.

On or about November 4, 2009, Plaintiff filed suit against Ms. Smailes in the Circuit Court of Raleigh County, West Virginia. *See Carl Allen v. Melinda Smailes* Civil Action No: 09-C-1-33-B.  On July 1, 2010, both Plaintiff's counsel and counsel representing Ms. Smailes informed Defendant, pursuant to West Virginia Code § 33-6-31(e), that Erie Insurance had offered its policy limits of $100,000 to settle Plaintiff's claim against Ms. Smailes. (Document 10 Ex. E) It appears uncontested that Ms. Smailes was an underinsured driver pursuant both to Plaintiff's policy issued by Defendant, Progressive, and West Virginia Code § 33-6-31.  On July 20, 2010, Plaintiff made a demand for $50,000, the per person policy limit, to settle Plaintiff's UIM claim with Defendant. (Document 10 Ex. H)  On July 22, 2010, Defendant's claim adjuster Paul Brown indicated Defendant would be in touch with Plaintiff regarding the UIM claim. (Document 10 Ex. G) By a letter dated August 23, 2010, Defendant denied Plaintiff's initial demand and referred his claim to their Attorney, Andy Brison.  Plaintiff reiterated his demand for the $50,000 policy limit on August 31, 2010 and September 8, 2010. (Document 10 Exs. I & J) On October 1, 2010, Defendant requested supplemental information from Plaintiff to further evaluate his claim, which Plaintiff supplied to Defendant on October 8, 2010. (Document 12 Exs. F & G) Yet again, Plaintiff asked for action on his prior demands by a letter dated November 22, 2010. (Document 12 Ex. H) On November 29, 2010, Defendant submitted an offer to settle the UIM claim for $5,000. (Document 10 Ex. K)  Consequently, Plaintiff filed the instant action on December 15, 2010.  On January 14, 2011, the case was removed to this Court.

In the meantime, the underlying claim against Ms. Smailes went forward. Defendant offered a settlement of $112,500 on the underlying claim on February 8, 2011. (Document 10

Ex. L) Subsequently, Defendant made an offer of judgment of $112,500 on February 14, 2011. (Document 10 Ex. M) On February 22, 2011, Plaintiff increased his demand to $250,295.88 to settle both the instant claim and the underlying claim. (Document 10 Ex. N) On March 3, 2011, the jury in the state court action returned a verdict in favor of Plaintiff. (Document 10 Ex. O) The jury determined Ms. Smailes was totally at fault and awarded Plaintiff $129,314.88. *Id*.

On April 21, 2011, Defendant filed its motion for summary judgment in the instant action. In support, Defendant argues that there exists no genuine dispute as to any material fact and, as a result of a jury verdict in Plaintiff's underlying underinsured motorist coverage case, Plaintiff did not substantially prevail against Defendant, which requires Plaintiff's instant action to fail. (Document 10 at 1.) Defendant further argues that Plaintiff's failure to substantially prevail entitles Defendant to summary judgment on Plaintiff's breach of contract, bad faith, and intentional infliction of emotional distress claims. (Document 11 at 7-8.) Further, Defendant argues it is entitled to summary judgment on Plaintiff's Unfair Trade Practices Act (UTPA) claim because Plaintiff did not substantially prevail on the underlying UIM claim. (Document 11 at 9-13.) Finally, Defendant contends it is entitled to summary judgment on Plaintiff's claim for punitive damages because Defendant did not act with actual malice. (Document 11 at 13-15.)

In response to Defendant's motion for summary judgment, Plaintiff argues that he substantially prevailed in the underlying claim when considering the difference between the last settlement offer and the amount awarded by the jury. Plaintiff also argues that Defendant's failure to timely investigate, evaluate and explain the basis for its refusal to offer a settlement compelled Plaintiff to initiate the instant suit. (Document 12 at 7-9.) Finally, Plaintiff contends that punitive damage are proper because Defendant actually knew that his claim was proper, but willfully, maliciously, and intentionally denied his claim. (Document 12 at 10-11.)

In reply, Defendant argues Plaintiff misplaces emphasis on a mathematical formula. Further, Defendant contends that the jury verdict ($129,314.88) is actually closer to the last offer it made ($12,500) than it is to Plaintiff's first demand ($50,000) or Plaintiff's last demand ($250,295.88).[2] (Document 13 at 3-4.) Defendant argues Plaintiff inexplicably claims that the Court is to compare Plaintiff's last settlement demand prior to filing suit with the amount of the jury verdict to ascertain whether he has substantially prevailed. (Document 13 at 5.) Instead, Defendant correctly argues determining whether the insured has substantially prevailed requires looking "at the negotiations as a whole from the time of the insured event to the final payment of the policy proceeds." *Miller v. Fluharty,* 500 S.E.2d 310, 321 (1997). Defendant also argues that Plaintiff's allegation that Defendant violated regulations promulgated by the West Virginia Insurance Commissioner do not support a separate cause of action. (Document 13 at 10.) Finally, Defendant contends Plaintiff cannot demonstrate actual malice which precludes Plaintiff from recovering punitive damages. (Document 13 at 11.)

## II.      STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001).

---

[2] This excludes the damages paid by Ms. Smailes' $100,000 insurance policy.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Id*. The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008).

The nonmoving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### III. APPLICABLE LAW

This Court has jurisdiction over this action based on complete diversity between the parties and an amount in controversy exceeding $75,000. Accordingly, this case is governed by the substantive law of West Virginia. *See Erie R.R. v. Thompkins,* 304 U.S. 64 (1938) (requiring federal courts sitting in diversity to apply the substantive law of the state in which they sit).

*A. Common Law Bad Faith Claim*

Under West Virginia law a first party insured may assert a bad faith claim against the insurer. *See Hayseeds, Inc. v. State Farm Fire & Cas*. 352 S.E.2d 73 (1986). Before a bad faith claim may be pursued, the underlying claim must ultimately be resolved. *Id*.

"Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." *Id*. at syl. pt. 1. "An insured 'substantially prevails' ... when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount." Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.,* 393 S.E.2d 647 (W.Va.1990). West Virginia extends *Hayseeds* to UIM claims. *Marshall v. Saseen*, 450 S.E.2d 791, 797 (W.Va. 1994).

Once a first-party insured submits a proof of loss, an insurance carrier has a duty to "promptly conduct a reasonable investigation of the policyholder's loss based upon all available information." Syl. pt. 3, *Miller v. Fluharty,* 500 S.E.2d 310 (W.Va. 1997). The *Miller* Court also announced that "if the [court] finds evidence that the insurance carrier has failed to properly or promptly investigate the policyholder's claim, then [it] may consider that evidence in determining whether the policyholder has substantially prevailed . . . [.]" *Id*. Further, "a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds" when determining if an insured substantially prevailed. *Id*. at syl. pt. 4. If the insured makes a reasonable demand within the policy limits during entire course of the negotiations, "the insurance carrier must either meet that demand, or *promptly* respond to the

6

policyholder with a statement why such a demand is not supported by the available information." *Id*. (emphasis added).

Once an insured proves that he or she substantially prevailed, the insurer is strictly liable up to the policy limits for consequential damages and attorney's fees. *See Hayseeds*, 352 S.E.2d at 79. However, in order to exceed the policy limits, an insured must prove bad faith. *Marshall*, 450 S.E.2d at 798. Bad faith is unreasonable conduct. *Id*. When an insured makes a prima facie showing of bad faith, the burden then shifts to the insurer to prove good faith. *Id*. The test to determine if insurer's actions were reasonable is "whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured." *Id*. In determining the reasonableness of an insurer's actions, the trial court should consider the following factors:

> whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

*Id*.

Finally, to recover punitive damages, an insured must meet a high threshold of actual malice by the insurer. *Hayseeds*, 352 S.E.2d at 80-81. Actual malice arises when "the company actually knew that the policyholder's claim was proper, but willfully, maliciously, and intentionally denied the claim." *Id.* Of course, the insured must have "substantially prevailed" on the under lying claim to even reach the question of punitive damages. *Jordache Enter., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 513 S.E.2d 692, 712 (W.Va. 1998).

B. *Unfair Trade Practices Act*

The Unfair Trade Practices Act (UTPA), W. Va. Code § 33-11-1 *et seq*, does not expressly provide for a private cause of action. However, the West Virginia Supreme Court of Appeals has construed the UTPA to provide for a private cause of action. *Morton v. Amos-Lee Securities*, 466 S.E.2d 542, 547 (W.Va. 1995). The UTPA provides a list of unfair insurance claim settlement practices set out in W. Va. Code § 33-11-4(9), four of which may apply to this case:

> *Unfair claim settlement practices.* No person shall commit or perform with such frequency as to indicate a general business practice any of the following: . . . (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . . (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered; . . . (n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

W. Va. Code § 33-11-4(9).

In order to maintain an action under W. Va. Code § 33-11-4(9), a plaintiff must first have a resolution of the underlying claim in his favor. *See McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 519 (W. Va. 1996). Unlike a common law bad faith claim, where an insured must substantially prevail on his underlying claim before he may recover, there is no requirement that one substantially prevail to pursue a claim under the UTPA. *McCormick*, 475 S.E.2d at 519. Thus, a court may not dismiss an insured's UTPA claim on such ground. *Id.*

Next, a plaintiff must establish some violations of W. Va. Code § 33-11-4(9). Few West Virginia cases have interpreted the substantive meaning of the violations in subsection (9). However, in *Jackson v. State Farm Mut. Auto. Ins. Co.*, the Court addressed the meaning of the

8

term of "reasonably clear" as used in the UTPA § 33-11-4(9)(f). *Jackson*, 600 S.E.2d 346 (W.Va. 2004). The Court held liability is "reasonably clear" under the UTPA when a reasonable person, with knowledge of the relevant facts and law, would conclude for good reason that the insurer is liable to the insured. *Id*. at 353. Moreover, "[w]hether an insurer refused to pay a claim without conducting a reasonable investigation based on all available information under W.Va. Code, 33-11-4(9)(d), and whether liability is reasonably clear under W.Va. Code, 33-11-4(9)(f) ordinarily are questions of fact for the jury." *Id*. at syl. pt. 3.

Additionally, West Virginia Code of State Rules gives guidance on insurer practices that could violate the UTPA. An "insurer shall establish procedures to commence an investigation of any claim filed by a claimant . . . within fifteen (15) working days of receipt of notice of claim." W. Va. Code R. § 114-14-6.2(a). "Within ten (10) working days of completing its investigation, the insurer shall deny the claim in writing or make a written offer, subject to policy limits…" *Id*. at § 114-14-6.3. "If the insurer needs more than thirty (30) calendar days from the date that a proof of loss from a first-party claimant . . . is received to determine whether a claim should be accepted or denied, it shall so notify the claimant in writing within fifteen (15) working days after the thirty-day period expires." *Id*. at § 114-14-6.7.

Further, a plaintiff must establish more than a single "isolated" violation of the UTPA to show that the insurance company's violations were of such frequency as to indicate a "general business practice." *McCormick*, 475 S.E.2d at 519. Several violations of different sub-paragraphs of the UTPA, or a sequence of separate and discrete violations of a single subsection will prove to be a "general business practice." *Dodrill v. Nationwide Mut. Ins*. Co., 491 S.E.2d 1, 10 (W. Va. 1996). Also, "multiple violations of W. Va. Code § 33-11-4(9), occurring in the same claim would be sufficient [to establish a general business practice], since the term

9

'frequency' in the statute must relate not only to repetition of the same violation but to the occurrence of different violations." *McCormick*, 475 S.E.2d at 519 (quoting *Jenkins v. J.C. Penney Casualty Insurance Company,* 280 S.E.2d 252, 260 (W.Va. 1981)).

Finally for the purposes of punitive damages under the UTPA, actual malice must be proven the same as in a common law bad faith claim.[3]

### IV. ANALYSIS

#### A. *Bad Faith Claim*

Plaintiff meets the first element of bringing a *Hayseeds* bad faith claim because the underlying claim was ultimately resolved. (Document 10 Ex. O.) The sole issue before the Court on this portion of Defendant's motion for summary judgment is whether Plaintiff substantially prevailed against Defendant.

If the Court were to just consider the mathematical differences between the offer, demand, and verdict as to whether Plaintiff substantially prevailed, then it would be a closer call. Plaintiff was ultimately awarded $129,314.88 in the underlying action. (Document 10 Ex. O.) Excluding the $100,000 paid by Ms. Smailes' insurance company, Defendant was obligated to pay 29,314.88 to Plaintiff under his UIM policy. Plaintiff made his first demand for the $50,000 UIM policy limit to Defendant on July 20, 2010. (Document 10 Ex. G.) Plaintiff repeated this demand on three other occasions before finally receiving the November 29, 2010 offer of $5,000 from Defendant, which was one hundred thirty-two (132) days after Plaintiff made his initial demand.[4] Plaintiff argues that he substantially prevailed because the jury verdict was closer to

---

[3] As discussed *supra*, actual malice arises when "the company actually knew that the policyholder's claim was proper, but willfully, maliciously, and intentionally denied the claim." *Hayseeds*, 352 S.E.2d at 80-81.

[4] Plaintiff repeated his $50,000 policy limit demand on August 31, 2010, September 8, 2010, and November 22, 2010.

his demand than to Defendant's offer. (Document 12 at 6.) Defendant responds that even if the Court were to accept a mathematical determination of whether Plaintiff substantially prevailed, Defendant's final offer of $12,500 was actually closer to the verdict than Plaintiff's $50,000 demand. (Document 13 at 8-9.) However, as Defendant points out in its reply, the *Miller* Court makes it clear that the determination if a plaintiff substantially prevailed is not just a simple mathematical calculation, but requires looking "at the negotiations as a whole from the time of the insured event to the final payment of the policy proceeds." *Miller,* 500 S.E.2d. at 321.

This Court can consider Defendant's failure to promptly investigate Plaintiff's claim in determining whether Plaintiff substantially prevailed. *Miller,* 500 S.E.2d. at syl. pt. 3. West Virginia Code of State Rules considers a prompt investigation to be thirty (30) calendar days. W.Va. Code R. § 114-14-6.7. Here, Defendant's investigation took nearly one hundred two (102) days longer than this thirty (30) day threshold. *Id.* In fact, Defendant did not even request information to supplement the July 20, 2010 demand until October 1, 2010, seventy-one (71) days after Plaintiff's original demand. (Document 12 Ex. F.) Nor did it timely notify the Plaintiff of its need for additional time to investigate. One hundred thirty-two (132) days between Plaintiff's demand and Defendants offer, without explanation, on its face, does not support a finding of a prompt investigation. Thus, the Court finds no evidence, in the record, that Defendant conducted a prompt investigation of Plaintiff's claim.

Defendant's denial stated "[w]e have been authorized to offer the Plaintiff $5,000 in consideration for a full and final release of her (sic) underinsured motorists claim. . . [.]" (Document 10 Ex. K.) Plaintiff made a reasonable demand within the policy limits, which required Defendant to either "meet that demand, or promptly respond to [Plaintiff] with a statement why such a demand is not supported by the available information." *Miller,* 500 S.E.2d

11

at syl. pt. 3. The Court finds that no evidence has been submitted that establishes that Defendant either met Plaintiff's demand or responded to Plaintiff with a statement of why his demand was not valid.

After careful consideration of the negotiations as a whole, the Court finds that Plaintiff substantially prevailed on the underlying claim. Although, mathematically, Plaintiff's recovery in the underlying action was near the middle between Plaintiff's demand and Defendant's offers, the Court has given great consideration to the jury's verdict, the time span of the parties' negotiations, the number of demands made by the Plaintiff, Defendant's failure to submit evidence that it promptly investigated Plaintiff's UIM claim, and also to Defendant's failure to give any reason or explanation for denying Plaintiff's policy limit demand in making its determination. Accordingly, Defendant's motion for summary judgment on Plaintiff's bad faith claim is denied.[5]

*B. UPTA Claim*

Defendant argues it is entitled to summary judgment because Plaintiff's failure to substantially prevail obviates Plaintiff's UTPA claims. (Document 11 at 9.) Aside from the fact that the Court determined Plaintiff substantially prevailed, Defendant argues the incorrect legal standard. Under the UTPA there is *no requirement that one substantially prevail*. *McCormick*, 475 S.E.2d at 519. (emphasis added). Rather, a plaintiff must show violations of Section 33-11-4(9) that arise at such a frequency that can be considered a "general business practice." *Id*. Plaintiff alleges four violations of Section 33-11-4(9) in his complaint. (Document 1-1 Ex A. at ¶¶ 17-20.) Plaintiff argues that Defendant completely ignored is obligations to Plaintiff even after it was well aware of Plaintiff's valid claim. (Document 12 at 11.)

---

[5] Since Plaintiff substantially prevailed in the underlying claim, Defendant's motion for summary judgment on Plaintiff's breach of contract and intentional inflectional of emotional distress claims are likewise denied.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact as to: whether Defendant refused to pay claims without conducting a reasonable investigation based upon all available information in violation of W. Va. Code § 33-11-4(9)(d); whether Defendant failed to attempt in good faith to effectuate a prompt, fair and accurate settlement in violation of W. Va. Code § 33-11-4(9)(f); whether Defendant failed to promptly provide a reasonable explanation of the basis for the denial of Plaintiff's claim in violation of W. Va. Code § 33-11-4(9)(n); and whether these alleged violations of Section 33-11-4(9) arise to such a frequency that they can be considered a general business practice. Accordingly, Defendant's motion for summary judgment on Plaintiff's UTPA claim is denied.

## C. *Punitive Damages*

Plaintiff must show that Defendant acted with actual malice to obtain punitive damages. Actual malice arises when "the company actually knew that the policyholder's claim was proper, but willfully, maliciously, and intentionally denied the claim." *Hayseeds*, 352 S.E.2d at 80-81. Defendant argues "[t]here is not one iota of evidence which could tend to prove that [Defendant] acted with actual malice." (Document 11 at 15.) Plaintiff responds that Defendant was aware of the duty it had to Plaintiff under the insurance regulations and continued to ignore its obligations to Plaintiff after he advised Defendant of their non-compliance, which a jury could find was "willful, malicious, and intentional" to support punitive damages. (Document 12 at 12.) Viewing the facts in a light most favorable to Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Defendant acted with actual malice. Accordingly, Defendant's motion for summary judgment on punitive damages is denied.

## V. CONCLUSION

Therefore, the Court hereby **ORDERS** that Defendant's Motion for Summary Judgment (Document 10) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 3, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA